LEE LITIGATION GROUP, PLLC
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

SERIN VURGUN,
*on behalf of herself, FLSA Collective Plaintiffs,
and the Class*,

  Plaintiff,

v.

MAIMONIDES MEDICAL CENTER,
and KENNETH GIBBS,

  Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, SERIN VURGUN ("Plaintiff VURGUN" or "Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, MAIMONIDES MEDICAL CENTER ("Corporate Defendant"), and KENNETH GIBBS ("Individual Defendant," and together with Corporate Defendant, "Defendants"), and states as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an impermissible policy of rounding

1

hours down; (2) unpaid wages, including overtime, due to time shaving; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an impermissible policy of rounding hours down; (2) unpaid wages, including overtime, due to time shaving; (3) compensation for late payment of wages; (4) liquidated damages; (5) statutory penalties; and (6) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiff is entitled to recover from Defendants for religion, and gender discrimination: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

4. Plaintiff further alleges that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiff is entitled to recover from Defendants for religion, and gender discrimination: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Plaintiff SERIN VURGUN is a resident of Suffolk County, New York.

8. Corporate Defendant MAIMONIDES MEDICAL CENTER is a domestic not-for-profit corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 4802 10th Ave, Brooklyn, NY 11219.

9. Individual Defendant KENNETH GIBBS is the President and CEO of Corporate Defendant MAIMONIDES MEDICAL CENTER and has operational control of Corporate Defendant. Individual Defendant KENNETH GIBBS exercises the power to (and also delegate to managers and supervisors the power to) (i) fire and hire employees, (ii) supervise and control employee work schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class Members of Corporate Defendant MAIMONIDES MEDICAL CENTER. Individual Defendant KENNETH GIBBS has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs and Class Members. Individual Defendant KENNETH GIBBS additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs and Class Members. Individual Defendant KENNETH GIBBS ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate MAIMONIDES MEDICAL CENTER is operating efficiently and profitably.

10. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to paramedics, EMTs, ambulance drivers, and dispatchers among others) employed by Defendants at MAIMONIDES MEDICAL CENTER on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime wages at the rate of one-and-one-half times the regular rate of pay due to an impermissible policy of rounding and time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

14. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to paramedics, EMTs, ambulance drivers, and dispatchers among others) employed by Defendants at MAIMONIDES MEDICAL CENTER on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

16. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Members of the Class.

18. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay them the proper wages, including overtime, due to an impermissible policy of rounding hours down; (ii) failing to pay them the proper wages, including overtime, due to time shaving; (iii) late payment of wages; (iv) failing to

provide proper wage statements per requirements of the NYLL; and (v) failing to provide proper wage and hour notices per requirements of the NYLL.

19. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

20. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

    b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

    c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime hours

f) Whether Defendants utilized an impermissible policy of rounding down hours of Plaintiff and Class Members;

g) Whether Defendants failed to pay Plaintiff and the Class Members all wages owed due to a policy of time shaving;

h) Whether Defendants paid Plaintiff and the Class Members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty (40) each workweek;

i) Whether Defendants paid Plaintiff and Class Members their lawful wages in a timely manner;

j) Whether Defendants provided proper wage statements informing the Plaintiff and the Class Members of their proper overtime rate of compensation and other information required to be provided on wage statements, as required under the NYLL;

k) Whether Defendants provided proper wage and hour notices to Plaintiff and the Class Members at date of hiring, as required under the NYLL; and

l) Whether Defendants provided to Plaintiff and the Class members proper wage statements with each payment of wages, as required under the NYLL.

**STATEMENT OF FACTS**

24. From in or about April 17, 2018, Plaintiff SERIN VURGUN was employed to work as a paramedic for Defendant MAIMONIDES MEDICAL CENTER at a garage located at 1036 38th Street, Brooklyn, NY 11219. Plaintiff was fired in or around July 13, 2021 and returned to work for Defendants on October 1, 2021. Plaintiff is still currently working for Defendants.

25. Throughout her employment with Defendants, Plaintiff VURGUN regularly worked three (3) days with two (2) shifts of sixteen (16) hours, and one (1) shift of eight (8) hours for a total of forty (40) hours per week. However, in reality Plaintiff worked more than her forty (40) scheduled hours, on a weekly basis.

26. Throughout her employment with Defendants, Plaintiff VURGUN was paid at various rates. From in or around April 17, 2018, to in or around December 19, 2020, Plaintiff was paid at an hourly rate of twenty-seven dollars and forty-two cents ($27.42) per hour. From in or around December 20, 2020, to in or around April 10, 2021, Plaintiff was paid at an hourly rate of thirty-two dollars and forty-one cents ($32.41) per hour. From in or around April 11, 2021, to in or around July 13, 2021, Plaintiff was paid at an hourly rate of thirty-three dollars and eighty-four cents ($33.84) per hour. From in or around October 1, 2021, to present day, Plaintiff was paid thirty-four dollars and fifty-two cents ($34.52) per hour. At all times, Plaintiff VURGUN was paid in check bi-weekly.

27. At all times, Plaintiff VURGUN's job consisted of performing manual work. Her duties included driving the ambulance, assisting and providing treatment for patients in need of assistance, moving patients, moving supplies and equipment, etc. FLSA Collective Plaintiffs and Class Members similarly performed such manual work.

28. Throughout her employment with Defendants, Plaintiff VURGUN was not always paid the overtime premium of one-and-one-half times her regular rate of pay for her hours worked in excess of forty (40) per week due to Defendants' impermissible policy of rounding hours down and time shaving, as required under the FLSA and NYLL.

29. Defendants subjected Plaintiff VURGUN to an impermissible and non-neutral policy whereby daily hours worked were rounded down to fifteen (15) minutes increments for purposes of calculating compensation. This policy of rounding down hours resulted in Plaintiff being compensated for less hours than she actually worked. Because she worked over forty (40) hours per week, this improper rounding resulted in unpaid overtime compensation. Likewise, FLSA Collective Plaintiffs and Class Members were subject to Defendants' rounding policy and suffered uncompensated regular and overtime hours as a result.

30. Throughout her employment with Defendants, Plaintiff VURGUN was not paid for all hours worked, including overtime, because she was time shaved. Plaintiff would come in early and clock in thirty (30) minutes prior to her scheduled shift. However, Defendants did not pay her for these hours and only paid for her scheduled hours. This occurred three (3) times each week. Therefore, Plaintiff was time shaved about one and a half (1.5) hours each workweek. Class Members were similarly engaged in work prior to their scheduled shift but were not paid for these hours.

31. Throughout her employment with Defendants, Plaintiff regularly observed and spoke to her co-workers about Defendants' pay practices and policies. Based on Plaintiff's observations and conversations with her co-workers, all non-exempt employees employed by Defendants regularly worked similar hours that regularly exceeded forty (40) hours per workweek and were paid at similar hourly rates.

32. Throughout Plaintiff's employment, Defendants regularly failed to pay Plaintiff her wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff with checks every two (2) weeks. Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

33. At all relevant times, the wage statements that Defendants provided to Plaintiff and Class Members were improper because they failed to accurately reflect the employees' hours worked.

34. At all relevant times, Defendants failed to provide Plaintiff and Class Members with any wage and hour notices as required under the NYLL.

35. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

36. Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiff and Class Members as required under the NYLL, as the wage statements did not accurately reflect the number of hours worked by employees.

37. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notice to Plaintiff and Class Members as required under the NYLL.

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

38. In addition to the wage and hour violations, Defendants also discriminated against Plaintiff VURGUN on the basis of her religion and gender. Plaintiff is female who believes in Modern Orthodox Judaism.

39. When Plaintiff was hired, she informed Defendants that she was in the process of converting to Judaism and could not work Saturdays or on Jewish religious holidays to be observant of the practices of the faith. Initially, Defendants accommodated her schedule.

40. After two (2) years, management began to treat Plaintiff differently. One noticeable incident occurred on May 16, 2021, after Plaintiff requested time off on April 13, 2021, to observe the holiday of Shavuot that fell on May 17, 2021, and May 18, 2021. A day prior to the holiday, Defendants had still not approved of her time off request. All of Plaintiff's other Jewish co-workers had already been approved for time off. Plaintiff reached out to the scheduling officer, Ricardo Mendoza, to inquire about the request. Ricardo Mendoza responded by saying, "You are not considered an observer who requires the time off" and referred her to one of her Jewish supervisors, Israel Rosenberg, to follow up on this request. Plaintiff contacted Israel Rosenberg who replied, "did you convert already because we don't have anything updated." After numerous conversations and push back from Defendants, they eventually granted Plaintiff's request.

41. Two years into her employment, supervisors and co-workers began to question Plaintiff's religious beliefs and assumed she was not "Jewish enough" to be respected like one of them. Throughout her employment, supervisors, including Enrique Arroyo made comments about Plaintiff leaving early on Fridays to observe the Sabbath. For example, Enrique Arroyo and other supervisors asked Plaintiff, "Can you stay?" When Plaintiff said no, Enrique Arroyo

replied, "It's not like you're really Jewish." At all other times Enrique Arroyo would shake his head and laugh derisively when Plaintiff left early on Fridays to observe the Sabbath.

42. Plaintiff was also discriminated because she was female. Plaintiff was denied accommodations because she was female. An example of such accommodation was that Plaintiff was denied her request to change her status to "per diem." Plaintiff sought this change because she wanted to work fewer hours because of the unhealthy work environment. In contrast to Plaintiff, two new male employees were hired per diem during the same week Plaintiff asked for the change. Furthermore, an existing male employee requested and was granted per diem. The refusal to grant Plaintiff's per diem request was an additional form of retaliation against Plaintiff's pursuit of her Jewish faith.

43. Instances like above, which were a result of Plaintiff requesting time off for religious holidays, ultimately led to Plaintiff being fired at one point.

44. Because of the constant discrimination and harassment endured at the workplace, Plaintiff has been seeing a therapist since November 2021. Plaintiff suffered extreme mental anguish and found it difficult to carry out her normal routines.

45. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

### ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

46. Plaintiff realleges and reavers Paragraphs 1 through 45 of this Class and Collective Action Complaint as if fully set forth herein.

47. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

49. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

50. At all relevant times, Defendants had a policy and practice of failing to pay overtime wages to Plaintiff and FLSA Collective Plaintiffs for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to an impermissible policy of rounding hours down and time shaving.

51. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

52. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

53. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

54. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

55. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to an impermissible policy of rounding hours down; unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

56. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## **VIOLATION OF THE NEW YORK LABOR LAW**

## **ON BEHALF OF PLAINTIFF AND CLASS MEMBERS**

57. Plaintiff realleges and reavers Paragraphs 1 through 56 of this Class and Collective Action Complaint as if fully set forth herein.

58. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

59. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay overtime wages for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to an impermissible policy of rounding hours down and time shaving, in violation of the NYLL.

60. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

61. Defendants knowingly and willfully failed to provide proper wage statements, which fail to reflect all hours worked, to Plaintiff and Class Members as required under the NYLL.

62. Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members as required under the NYLL.

63. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to an impermissible policy of rounding hours down; unpaid wages, including overtime, due to time shaving; damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

64. Plaintiff realleges and reavers Paragraphs 1 through 63 of this Class and Collective Action Complaint as if fully set forth herein.

65. The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms conditions, and privileges of employment, and the retaliation therefor, on the basis of an individual's religion and gender.

66. Plaintiff is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employees under the NYSHRL.

67. At all relevant times, Plaintiff is female and Defendants knew that Plaintiff believes in Modern Orthodox Judaism.

68. Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant harassment and abuse made against Plaintiff on the basis of her religion and gender, and by terminating Plaintiff's employment at one point.

69. Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

70. As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury including economic damages, and past and further physical and emotional distress.

71. Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

72. Plaintiff realleges and reavers Paragraphs 1 through 71 of this Class and Collective Action Complaint as if fully set forth herein.

73. The New York City Human Right Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's religion, and gender.

74. At all relevant times, Plaintiff is female and Defendants knew that Plaintiff believes in Modern Orthodox Judaism.

75. Defendants have and have had at all relevant times herein, at least four (4) persons in their employment. Plaintiff is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employees under the NYCHRL.

76. Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant harassment and abuse made against Plaintiff on the basis of her religion, and gender, and by terminating Plaintiff's employment at one point.

77. As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, the past and future physical and emotion distress, and costs of bringing this action.

78. Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, due to an impermissible policy of rounding hours down due under the FLSA and NYLL;

d. An award of unpaid wages, due to Defendants' policy of time shaving under FLSA and NYLL;

e. An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

f. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g. An award of liquidated damages as a result of Defendants' willful failure to pay the proper overtime wages, pursuant to the FLSA and/or NYLL;

h. An award of back pay and compensatory damages due under the NYSHRL and NYCHRL;

i. An award of punitive damages under the NYSHRL and NYCHRL;

j. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

  m. Designation of Plaintiff as Representative of the Class; and

  n. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 23, 2022   Respectfully submitted,

          By: */s/ C.K. Lee*
            C.K. Lee, Esq.

            LEE LITIGATION GROUP, PLLC
            C.K. Lee (CL 4086)
            Anne Seelig (AS 3976)
            148 West 24th Street, Eighth Floor
            New York, NY 10011
            Tel.: (212) 465-1188
            Fax: (212) 465-1181
            *Attorneys for Plaintiff,*
            *FLSA Collective Plaintiffs,*
            *and the Class*